*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0299**

City of Apple Valley, petitioner,
Respondent,

vs.

William C. Thompson (deceased), et al.,
Respondents Below,

Gene Rechtzigel, individually and as trustee of
Evelyn I. Rechtzigel Trust and Frank H. Rechtzigel
Charitable Remainder Unitrust,
Appellant.

**Filed November 16, 2015
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-CV-14-1763

Robert B. Bauer, Michael G. Dougherty, Brian J. Wisdorf, Dougherty, Molenda, Solfest, Hills & Bauer P.A., Apple Valley, Minnesota (for respondent)

Mark A. Olson, Olson Law Office, Burnsville, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant, a property owner, challenges the district court's orders granting the eminent-domain petition filed by respondent, a city, and denying appellant's motion for summary judgment and request for relief under Minn. Stat. § 554.02 (2014). Because we see no error of law in either order, we affirm.

## FACTS

In 1860, William Thompson, deceased, acquired a piece of real property, most of which he later conveyed. One part he did not convey was a strip of land about half a mile long and 15 to 20 feet wide (the gap) in respondent City of Apple Valley (the city). No subsequent owner of the gap has been recorded.

When the city realized that it did not own the gap although its water and utilities are located within it, the city passed a resolution authorizing the use of its eminent-domain power to acquire the gap by the quick-take process and began an eminent-domain action. The city notified every landowner who was in any way likely to be affected by its taking of the gap.

One of those notified was Fischer Sand and Aggregate (Fischer); another was appellant Gene Rechtzigel, acting individually and as trustee of the Evelyn I. Rechtzigel Trust and the Frank H. Rechtzigel Charitable Remainder Unitrust. Appellant moved to dismiss the city's eminent-domain action for lack of jurisdiction, failure to join an indispensable party; relief under Chapter 554 of the Minnesota Statutes, and lack of ripeness; he also moved for summary judgment and for attorney fees and costs. Hearings

were held on the city's eminent-domain petition and appellant's motions. After the hearings, the district court issued two orders, one denying all of appellant's motions and the other granting the city's eminent-domain petition and permitting the city to deposit the price of the gap with the court, thus acquiring fee title, interest, and right to possession.

Appellant challenges the orders, arguing that the district court erred by: (1) not dismissing the proceedings for the city's failure to join an indispensable party under Minn. Stat. § 117.036, (2) not dismissing or staying the proceedings for lack of jurisdiction, (3) not dismissing the proceedings under Minn. R. Civ. P. 12.02(e) and Minn. R. Civ. P. 19.01, (4) denying appellant's motion for summary judgment, (5) granting the city's petition for eminent domain, and (6) not granting appellant attorney fees and costs under Minn. Stat. § 554.02.[1]

---

[1] Appellant also argues that the district court "improperly engaged in verbatim adoption" of the city's proposed orders denying appellant's motions and granting eminent domain. While this is true of the order granting eminent domain, it is not true of the order denying appellant's motions. In any event, "[a] district court's verbatim adoption of a party's proposed findings and conclusions of law is not reversible error per se." *Schallinger v. Schallinger*, 699 N.W.2d 15, 23 (Minn. App. 2005) (citations omitted), *review denied* (Minn. Sept. 28, 2005). Moreover, "[a]doption of a party's proposed findings by a district court is generally an accepted practice," and this court "examines the findings to determine whether they are clearly erroneous." *Id. But see Lundell v. Coop. Power Ass'n*, 707 N.W.2d 376, 380 n.1(Minn. 2006) ("We discourage district courts from adopting proposed findings of fact and conclusions of law verbatim because it does not allow the parties or a reviewing court to determine the extent to which the court's decision was independently made."). Thus, while verbatim adoption may not be the best practice, it is not grounds for reversal.

## D E C I S I O N

### 1.    Failure To Join An Indispensable Party

Statutory interpretation is a question of law and is reviewed de novo. *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn. 2008).

"[B]efore commencing an eminent domain proceeding, the acquiring authority must make a good faith attempt to negotiate personally with the owner of the property in order to acquire the property through direct purchase instead of the use of eminent domain proceedings." Minn. Stat. § 117.036, subd. 3 (2014). "For purposes of this section, 'owner' means fee owner, contract purchaser, or business lessee who is entitled to condemnation compensation under a lease." Minn. Stat. § 117.036, subd. 1a (2014). Appellant argues that the district court erred in interpreting "owner" to mean the last owner of record, namely the late William Thompson, instead of appellant because "[the city] had express knowledge prior to the commencement of the [eminent domain] action that [appellant] owned the property."

Appellant argues that "owner," defined in Minn. Stat. § 117.036, subd. 1a, means "fee owner, contract purchaser, or business lessee" and does not mean "record owner." But there was neither a record owner nor an adjudicated owner of the gap with whom the city could have negotiated the direct purchase of the property in order to comply with Minn. Stat. § 117.036, subd. 3, because the last record owner was dead and no other owner has been adjudicated.[2]

---

[2] This court has twice noted that appellant has not attempted to register his ownership of the gap. *In re Application of Fischer Sand & Aggregate*, No. A14-0735, 2015 WL

4

The district court did not err in not interpreting Minn. Stat. § 117.036, subd. 3, to require the city to negotiate the direct purchase of the gap with appellant (who, being neither the adjudicated owner nor the owner of record, could not have sold it in any event).

## 2. Jurisdiction

While the filing of an appeal suspends the district court's authority "to make any order that affects the order or judgment appealed from," the district court "retains jurisdiction as to matters . . . collateral to" that order or judgment. Minn. R. Civ. App. P. 108.01, subd. 2.

Appellant argues that the district court lacked jurisdiction over the city's eminent-domain petition because, at the time of the October 2014 hearing, two related cases, *In re Application of Rechtzigel*, No. A14-0449, 2014 WL 6609118 (Minn. App. Nov. 24, 2014) (*Rechtzigel*), and *In re Application of Fischer Sand & Aggregate*, No. A14-0735, 2015 WL 1128658 (Minn. App. Mar. 16, 2015), *review denied* (Minn. May 27, 2015) (*Fischer*) were before this court.[3] The district court noted that "the dispute over the [gap's] eastern boundary line does not directly impact [the city's] eminent domain action" and that "[the city] has provided proper notice to all parties who may have a claim to the land at issue, be it [Fischer] or [appellant]." Appellant does not dispute this. The district court did not

_____

1128658 at *1 (Minn. App. Mar. 16, 2015) ("[A]ppellant did not perfect an application to register the gap."), *review denied* (Minn. May 27, 2015); *In re Application of Rechtzigel*, No. A14-0449, 2014 WL 66091188, at *1 (Minn. App. Nov. 24, 2014) ("[Appellant] . . . has not yet initiated an action to register ownership of the gap.").

[3] After the hearings, but before the district court issued its orders, this court released *Rechtzigel*.

err in concluding that the pending appeals did not deprive it of jurisdiction over the eminent-domain action.

**3.      Failure to Dismiss Under Minn. R. Civ. P. 12.02(e) and Minn. R. Civ. P. 19.01**

Appellant argues that the city failed to set forth a legally sufficient claim for relief, as required by Minn. R. Civ. P. 12.02(e), because it did not join Fischer, whose joinder as an indispensable party was required under Minn. R. Civ. P. 19.01. But neither in his brief nor in his reply brief does appellant dispute the district court's statement that, "[b]ased upon [Fischer]'s declarations [that it did not believe it was an indispensable party to the proceedings] and quitclaim deed [conveying to the city any interest Fischer might have in the land the city intended to acquire] this court cannot find that [Fischer] is an indispensable party." Therefore, the district court did not err in failing to dismiss the proceedings under Minn. R. Civ. P. 12.02(e) and Minn. R. Civ. P. 19.01.

**4.      Denial of Summary Judgment**

Appellant moved for summary judgment on the ground that the city had failed to provide any evidence to support its contention that the taking of the land was for various public purposes; he also argued that the district court was obliged to rule on his summary-judgment motion before holding a hearing on the city's eminent-domain petition. But the city complied with the statutory requirements that it file a petition describing the land it wanted to acquire, stating why it wanted the land, and identifying all those with a recorded or known interest in the land, *see* Minn. Stat. § 117.055, subd. 1 (2014), and that it provide notice of the petition and of the time and place of a public purpose hearing, *see* Minn. Stat. § 117.055, subd. 2 (2014). The district court then

6

complied with the statutory requirement that, upon receiving proof of service of notice of the petition and the hearing, it "hear all competent evidence offered for or against the granting of the petition." *See* Minn. Stat. § 117.075, subd. 1.

Appellant cites no support for his view that the district court should have required the city "to provide proof of public purpose prior to the hearing contemplated by § 117.075 in response to a summary judgment motion," claiming that this is "a matter of first impression." But the statute clearly requires a district court to hear the evidence for and against the condemnation when it is notified of service; it does not provide that a condemnation petition may be resolved on another party's motion for summary judgment. The district court did not err in denying summary judgment on procedural grounds.

## 5. Granting of Eminent Domain

"[T]here are two levels of deference paid to condemnation decisions: the district court gives deference to the legislative determination of public purpose and necessity of the condemning authority[,] and the appellate courts give deference to the findings of the district court, using the clearly erroneous standard." *Lundell v. Coopertive Power Ass'n*, 707 N.W.2d 376, 381 (Minn. 2006). "[A] condemning authority . . . must determine that there is a public use for the land and that the taking is reasonably necessary or convenient for the furtherance of that public use." *Id.* at 380.

### A. Public purpose

"Public purpose is construed broadly. The standard for overturning a condemning authority's decision on public purpose grounds is very strict." *Id.* at 381 (quotation and

7

citation omitted).  "If it appears that the record contains some evidence, however informal, that the taking serves a public purpose, there is nothing left for the courts to pass upon." *Hous. and Redev. Auth. v. Minneapolis Metro Co.*, 259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960).

In its order granting the petition, the district court relied on the testimony of the city's director of public works, who testified that storm-sewer and sanitary-sewer lines, to which the city must have access for maintenance, cross the gap at four locations; that the city plans to expand both a pond and a park on the city property adjacent to the gap, and that a road that now terminates at the gap must be extended because of a development agreement. Thus, there was evidence to support the determination that the taking serves a public purpose.

**B.     Necessity**

"Overwhelming evidence that the taking is not necessary" is required "[t]o overcome a condemning authority's finding of necessity[.]" *Lundell*, 707 N.W.2d at 381. "The mere suggestion of possible alternatives to the condemning authority's plan will not in itself support a finding of arbitrariness." *Id.* (quotation omitted).  The district court concluded that, because appellant "failed to present any evidence at the hearing[, he had] not met [his] burden to establish that the taking is not necessary"; although he did "elicit[] testimony to suggest that the city could simply obtain a utility easement for each of these purposes rather than condemning the entire [gap,] . . . [i]t would be unreasonable to require the city to obtain multiple utility easements in order to maintain a strip of land that has no independent purpose."

Particularly in light of its obligation to give deference to the city's determination, the district court did not err in granting the eminent-domain petition.

**6.      Attorney Fees Under Minn. Stat. § 554.04 (2014)**

Finally, appellant argues that the district court erred in denying him the attorney fees mandatory under Chapter 554 (the anti-SLAPP statute). Whether the anti-SLAPP statute applies is a legal question of statutory interpretation and is reviewed de novo. *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 840 (Minn. 2010). A strategic lawsuit against public participation, or SLAPP, is a lawsuit initiated to either prevent citizens from exercising their political rights or to punish them for having done so. *Id.* at 838 (interpreting the anti-SLAPP statute).

> [T]he first step in evaluating an anti-SLAPP motion is to determine whether the party seeking dismissal under the anti-SLAPP statute has made a threshold showing that the underlying claim materially relates to an act of the moving party that involves public participation.

*Leiendecker v. Asian Women United of Minnesota*, 848 N.W.2d 224, 229 (Minn. 2014) (citing Minn. Stat. § 554.02, subd. 1 (2008) and holding that allegations in a complaint do not meet the requirement that the responding party produce clear-and-convincing evidence that the moving party is not entitled to immunity) (quotation omitted), *as modified* 855 N.W.2d 233 (Minn. Sept. 3, 2014).

Appellant has not shown that the city's eminent-domain proceeding was materially related to his public participation in government. The city showed that its proceeding resulted from its realization that it had utilities on a strip of land it did not own and its

9

need to extend and maintain those utilities.  The anti-SLAPP statute has no application here, and appellant is not entitled to attorney fees under it.

**Affirmed.**